J-A27039-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| BETTY LOU COYLE | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| REED B. COYLE, III | |
| Appellant | No. 1842 WDA 2014 |

Appeal from the Order entered October 16, 2014
In the Court of Common Pleas of Washington County
Domestic Relations at No: No. 2009-5253

BEFORE:  BOWES, OLSON, and STABILE, JJ.

MEMORANDUM BY STABILE, J.:          **FILED DECEMBER 21, 2015**

Appellant Reed B. Coyle, III ("Husband") appeals from an order of the Court of Common Pleas of Washington County ("trial court"), which denied his petition for special relief.  Upon review, we affirm.

The facts and procedural history underlying this case are undisputed. Briefly, on June 24, 2009, Appellee Betty Lou Coyle ("Wife") filed for divorce, alleging that her marriage to Husband was irretrievably broken.  On October 29, 2010, the trial court entered a consent order, memorializing the parties' agreement with respect to the equitable distribution of assets.  On April 13, 2011, Husband filed a motion to quash the October 29, 2010 consent order, alleging that Wife refused to provide him with a copy of the prenuptial agreement and barred him from obtaining his personal belongings and

business records.  The trial court denied the motion.  On August 3, 2011,

Husband filed an emergency petition for special relief, alleging:

> 5. One vital piece of information still in possession of [Wife], which she has refused to return, was the agreement between [Wife] and [Husband] regarding the proceeds from 225 Victoria Lane, McMurray, Pennsylvania 15317 in the event of a divorce. Prior to the parties' marriage, [Husband] owned 209 Braun Drive, McMurray, Pennsylvania 15317 and the proceeds of the sale of that residence went, in part, towards the purchase of the Victoria Lane property.
>
> 6. The contents of the agreement, which was drafted by [Wife's] former attorney, Ms. Louann G. Petrucci, stated that due to [Husband's] prior ownership of the Braun Drive property he would receive the entire selling price of $375,000.00 in the event of divorce.  It is [Husband's] belief that [**Wife**] **deliberately hid or destroyed the executed agreement** [**(Braun Agreement)**] **in order to prevent** [**Husband**] **from receiving the proceeds from his pre-marital property**.
>
> 7. At the time of the execution of the above-mentioned [October 29, 2010 consent order, Husband] was unable to obtain **a copy of the** [**Braun Agreement**] **to assert his equitable distribution rights to his pre-marital property due to** [**Wife's**] **refusal to comply with the discovery request made on July 29, 2010**.
>
> . . . .
>
> 9. The parties are currently before Eric Held regarding the [p]etition for [c]ontempt [Husband] brought against [Wife] for the discovery requests.  **Testimony has been given by** [**Husband**] **as to the existence of the** [**Braun Agreement**] and another hearing date has been scheduled for August 31, 2011 to continue with the testimony.

Husband's Emergency Petition, 8/3/11 (emphasis added).  Based on the

foregoing allegations, Husband requested the trial court to deposit the net

proceeds from the sale of the parties' Deep Creek property, located in

Maryland, into an escrow account until the issue of Husband's pre-marital

property was resolved.  The trial court granted the emergency petition to the

extent it directed Wife to produce copies of all documents relating solely to

- 2 -

the Deep Creek property in her possession. On November 17, 2011, Divorce Master Eric Held filed his report and recommendation, to which both parties filed exceptions. On April 11, 2012, the trial court granted in part and denied in part Wife's exceptions to the report. On May 8, 2012, the trial court issued a decree, divorcing Husband and Wife from the bonds of matrimony under 23 Pa.C.S.A. § 3301(c).

Eventually, more than two years later, Husband filed the instant petition for special relief on October 16, 2014, alleging once again:

> 7. One vital piece of information still in possession of [Wife], which she has refused to return despite several [c]ourt orders to do so, was the [Braun Agreement] between [Husband] and [Wife] regarding the purchase of 225 Victoria Lane, McMurray, Pennsylvania 15317 as well as the proceeds from 209 Braun Drive, McMurray, Pennsylvania 15317 ([Husband's] pre-marital property) in the event of a divorce.
>
> 8. It is undisputed that prior to the parties' marriage, [Husband] owned 209 Braun Drive, McMurray, Pennsylvania 15317. A copy of the deed to 209 Braun Drive, McMurray, Pennsylvania 15317 is attached hereto[.]
>
> 9. **Despite [Wife's] attempts to keep [Husband's] documents hidden, [Husband] was able to obtain a copy of the [Braun Agreement].** A copy of the [Braun Agreement] is attached hereto and marked as Exhibit "G."
>
> 10. The contents of the [Braun Agreement], which was drafted by [Wife's] former attorney, Ms. Louann G. Petrucci, stated that due to [Husband's] prior ownership of the Braun Drive property he would receive reimbursement for all purchase sums expended by him for the purchase and real estate fees as well as improvements to Victoria Lane in the event of a divorce (including down payment and prorated items as stated on the final settlement statement executed at the closing on August 26, 2003). . . .
>
> 11. On September 29, 2006, the property located at 209 Braun Drive, McMurray, Pennsylvania 15317 was sold for $375,000.00. . . .
>
> . . . .

- 3 -

13. **It is [Husband's] belief that [Wife] deliberately hid or destroyed the executed [Braun Agreement] in order to prevent [Husband] from receiving the proceeds from his pre-marital property**.

Husband's Petition for Special Relief, 10/16/14 (emphasis added). Based on these allegations, Husband petitioned the trial court to impose a constructive trust (under 23 Pa.C.S.A. § 3505(d)) on the Victoria Lane property.

Wife filed an answer and new matter in response to the petition for special relief, asserting that "[Husband] was provided all documents by his prior counsel at a date prior to August of 2011. [Husband] continues to allege that he has been harmed by [Wife's] alleged failure to return documents that have been in his possession for over three (3) years." Wife's Answer to Petition for Special Relief, 10/16/14, ¶ 6. Wife further asserted:

> The issue has been fully litigated. [Husband], while being represented, entered into [the October 29, 2010 agreement]. He now wants us to believe that he simply forgot about the previous [Braun Agreement], and now, four (4) years later, wishes to re-litigate and [sic] agreed upon issue. [Husband's] counsel has been in possession of the [Braun Agreement] since prior to August 2011.

*Id.* at ¶ 25. The trial court denied the petition on the same day. Husband timely appealed to this Court. The trial court directed Husband to file a Pa.R.A.P. 1925(b) statement of errors complained of on appeal. Husband complied. In response, the trial court issued a Pa.R.A.P. 1925(a) opinion, concluding in part that Husband was barred by the doctrine of *res judicata* from re-litigating the issue of the Braun Agreement pertaining to Husband's

pre-marital property. In defining *res judicata*, our Supreme Court has explained:

> *Res judicata*, or claim preclusion, prohibits parties involved in prior, concluded litigation from subsequently asserting claims in a later action that were raised, or could have been raised, in the previous adjudication. The doctrine of *res judicata* developed to shield parties from the burden of re-litigating a claim with the same parties, or a party in privity with an original litigant, and to protect the judiciary from the corresponding inefficiency and confusion that re-litigation of a claim would breed.

***Wilkes ex rel. Mason v. Phoenix Home Life Mut. Ins. Co.***, 902 A.2d 366, 376 (Pa. 2006) (citations omitted).

> On appeal, Husband raises only two issues for our review.
>
> 1. Were [Husband's] rights under 23 Pa.C.S.A. § 3505(d) and 23 Pa.C.S.A. § 3332 violated due to the trial court's error of law by failing to grant a hearing regarding the pre-marital and marital property pertaining to the parties that was not previously distributed?
>
> 2. Were [Husband's] rights under the Fourteenth Amendment to the United States Constitution violated when [Husband] was denied a hearing, without the presentation of evidence, without testimony and without the opportunity to argue or object regarding the equitable distribution of pre-marital and marital property?

Husband's Brief at 3.[1] The issue of *res judicata*, upon which the trial court predicated its decision to deny Husband's petition for special relief, was not addressed in any meaningful way in Husband's brief. Nonetheless, after careful review of the parties' briefs, the record on appeal, and the relevant

_____

[1] To the extent Husband challenges the divorce decree under Section 3332 of the Divorce Code, we reject the challenge as waived. Husband raised this issue for the first time on appeal in his Rule 1925(b) statement. **See** Pa.R.A.P. 302(a).

case law, we conclude that the trial court's Rule 1925(a) opinion authored by the Honorable Valarie S. Costanzo adequately disposes of Husband's issues on appeal. *See* Trial Court Opinion, 12/30/14, at 4-11. We, therefore, affirm the trial court's order denying Husband's petition for special relief. We direct that a copy of the trial court's December 30, 2014 Rule 1925(a) opinion be attached to any future filings in this case.

Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 12/21/2015

IN THE COURT OF COMMON PLEAS OF WASHINGTON COUNTY, PENNSYLVANIA

CIVIL DIVISION

| | |
|---|---|
| BETTY LOU COYLE, | ) |
| | ) |
| Appellee, | ) |
| v. | ) No. 2009-5253 |
| | ) |
| | ) |
| REED B. COYLE, III, | ) |
| | ) |
| Appellant. | ) |

**OPINION PURSUANT TO Pa.R.A.P. 1925(a)**

This matter comes before the Trial Court ("Court") pursuant to Pa. R.A.P. 1925(a) regarding an appeal of its order dated October 16, 2014 ("Order") which denied Reed B. Coyle's ("Appellant") Petition for Special Relief ("Petition"). The Petition contained allegations that Betty Lou Coyle ("Appellee") "deliberately hid or destroyed" documents relating to the "purchase of 225 Victoria Lane, McMurray, Pennsylvania 15317 as well as the proceeds from 209 Braun Drive, McMurray, Pennsylvania 15317." Upon consideration of Appellant's petition, Appellee's response, and arguments during motions court, the Petition was denied. For the reasons that follow, the Petition was properly denied.

**PROCEDURAL HISTORY**

The underlying procedural history is extensive, containing six files over a five year period. Therefore, the most pertinent events are highlighted herein. On June 24, 2009, Appellee filed the Complaint in Divorce. Thereafter, on August 4, 2009, the parties entered into a Consent Agreement which granted Appellee exclusive possession of the parties' residence located at 225

1

Victoria Lane and Appellant exclusive possession of the parties' residence located at 270 Lake Forest Estates. On October 29, 2010, the parties signed a Consent Agreement regarding equitable distribution. At that time, the parties stipulated that the only remaining issues subject to equitable distribution were Steeler tickets and division of household contents.

On April 8, 2011, Appellant filed a Motion to Quash the October 29, 2010 Consent Agreement averring that he never received certain personal belongings or business records. Furthermore, Appellant claimed that he did not receive a copy of a Pre-Nuptial Agreement executed on September 30, 1982 until after he entered into the October 29, 2010 Consent Agreement. According to Appellant, the Pre-Nuptial Agreement outlined "the parameters of the parties' intentions regarding their personal assets." Judge DiSalle denied the Motion to Quash. On August 3, 2011, Appellant presented another Petition for Special Relief. Among other things, Appellee was thereby ordered to produce copies of any and all documentation, in her possession, pertaining to the parties' Deep Creek property.

Divorce Master Eric Held, Esq. conducted hearings on March 18, 2011, March 28, 2011, July 25, 2011, and August 31, 2011. Both parties submitted Proposed Findings of Fact and Conclusions of Law on September 19, 2011. Appellant asserted that certain unsettled issues were addressed at the hearings before Master Held including "the season Steeler Tickets and the PSLs, the division of the household contents of Victoria Lane, payment of legal fees for the Harborside Resort property, additional funds owed by either party and the contempt claim made by Husband against Wife for failure to produce documents in her possession." Thereafter on November 17, 2011, Master Held issued a Report and Recommendation, finding that Husband's testimony was credible and recommending that the court sanction Wife the amount of $4500 for being in contempt of a court order. Each party subsequently filed exceptions.

2

On April 11, 2012, Judge Gilman addressed the exceptions filed by each party and stated in his order that the Master made a reasonable decision regarding a $4500 sanction imposed upon Appellee for Appellant's expenses in attempting to retrieve documents. Judge Gilman further stated in his order that the decision of Master Held was primarily based upon the credibility of the witnesses, and thus, the Court would not disturb the Master's finding of credibility. The final divorce decree was issued by Judge Gilman on May 8, 2012.

On August 31, 2012, Appellant filed another Petition for Contempt and in the petition stated that "Defendant had made several attempts to retrieve his professional and personal documents, including but not limited to, trust documentation, [and] agreements between Plaintiff and Defendant regarding marital and pre-marital assets. . ." Judge Gilman addressed Appellant's petition in an order dated August 31, 2012 and determined that the matter would be heard on September 5, 2012. Subsequently, on September 10, 2012, Judge Gilman issued an order addressing Appellant's claim that Appellee withheld documents. Judge Gilman noted that the issue was previously addressed, and "no appeal was taken to the Superior Court and this Court will not re-litigate the issue of sanctions."

More than two years later, on October 16, 2014, Appellant filed a lengthy Petition for Special Relief to this Court in which Appellant claimed Appellee "deliberately hid or destroyed" an agreement dated August 26, 2003 regarding the distribution of proceeds from the Braun Drive property and improvements made to the Victoria Lane property in the event of divorce. In this same petition, Appellant averred that Appellee refused to comply with a July 19, 2010 discovery request. Appellee responded by filing a document entitled "Answer and New Matter" stating, among other things, that Appellant had all discovery information that Appellee had in her

3

possession. Appellee also provided this Court with a copy of an index, which indicated that Appellant had been provided with the documents at issue.

Appellee further averred that Appellant was present during the negotiations regarding the October 29, 2010 Consent Agreement, never asserted that any such documents existed, and is simply attempting to relitigate the issue of sanctions. Appellee also claimed that this matter is another attempt by Appellant to re-open the October 29, 2010 Consent Agreement. On October 16, 2014, after each side had an opportunity to present his or her respective position, this Court denied Appellant's Motion for Special Relief. Appellant appealed the Order; therefore, on November 6, 2014, this Court issued an order in accordance with Pa.R.A.P. 1925(b) directing Appellant to file and concurrently serve upon the trial judge a Concise Statement ("Statement") of the matters complained of on this appeal. Appellant's Statement was filed on November 26, 2014. Accordingly, this matter is ripe for consideration.

## OPINION

The first three assertions of Appellant's Statement overlap, thus they will be addressed together. Specifically, Appellant asserts that the Court erred in the following three ways:

1. The trial court violated Appellant's procedural due process rights guaranteed by the 14th Amendment to the United States Constitution by entering the order without granting a hearing, without the presentation of evidence, without testimony and without the opportunity to argue or object;

2. The trial court violated Appellant's procedural due process rights guaranteed by the 14th Amendment of the United States Constitution by entering the order, which effects [sic] property owned by him without a hearing, without the presentation of evidence, without testimony and without the opportunity to argue or object;

3. The Court abused its discretion by denying Appellant's request for a hearing to address the validity of the claim by Appellant that Appellee hid the documentation pertaining to the parties' agreement prior to and up until the time of the parties' consent order of court regarding the distribution of premarital and marital property was solidified.

4

The Court did not violate Appellant's procedural due process rights nor did the Court abuse its discretion by denying Appellant's request for a hearing. As demonstrated by the extensive procedural history of this case, Appellant has previously litigated the exact issues of which he now complains. If the Court granted him a new hearing, he would have been improperly provided with an opportunity to relitigate the same issues. The Court will further explain its reasoning below.

On October 16, 2014, the parties argued their respective positions before this Court. Appellant asked the Court to impose a constructive trust with respect to property located on Victoria Lane and argued that such relief was warranted because Appellee deliberately hid or destroyed documents. Tr. 3: 5-17 (Oct. 16, 2014). Appellant also requested a hearing if the Court was not inclined to immediately grant a constructive trust.

Appellee countered that it was apparent that Appellant was merely attempting to disguise an issue that was already raised or could have been raised. According to Appellee, the parties have "been down this road so many times previously," and Appellant presented a similar petition in April 2011 asking that the October 29, 2010 Consent Agreement be vacated. Tr. 6: 3-8 (Oct. 16, 2014). Appellee also asserted that Appellant has been in possession of all necessary documents since August of 2011. Tr. 6: 15-17. The Court was provided with an index of all documents Appellant received in support of this assertion. Tr. 6:23-25; 7: 3-8. Finally, Appellee stated that the parties were still in front of Master Held at this point in time as their final hearing was not until August 31, 2011. Tr. 7: 9-16. The Court agrees with Appellee and finds that Appellant had all necessary documents and indeed had the opportunity to previously assert the issues of which he now complains. The Court finds that 23 Pa. C.S.A. § 3333 bars Appellant from reasserting its claim now.

5

According to 23 Pa. C.S.A. §3333 "Res Judicata and Estoppel:"

> The validity of a divorce or annulment decree granted by a court having jurisdiction over the subject matter may not be questioned by a party who was subject to the personal jurisdiction of the court except by direct appeal provided or prescribed by law. A party who sought and obtained a decree, financed or agreed to its procurement, or accepted a property settlement, alimony pendente lite or alimony pursuant to the terms of the decree, or who remarries after the decree, or is guilty of laches, is barred from making a collateral attack upon the validity of the decree unless, by clear and convincing evidence, it is established that fraud by the other party prevented the making of a timely appeal from the divorce or annulment decree.

23 Pa. C.S.A. § 3333 (West). Here, Appellant did not meet his burden. He did not establish by clear and convincing evidence that fraud by Appellee prevented the making of a timely appeal from the divorce or annulment decree. Furthermore, Appellant never properly appealed any of the previous judgments issued by other judges in this case. Appellee provided a convincing argument and submitted proof that Appellant had an opportunity to be heard. Namely, Appellee provided an index of all documents in Appellee's possession and also pointed to the procedural history of this case. It became clear that Appellant has filed numerous petitions in front of different judges, has had opportunities to be heard, and an appeal was never filed from any of these previous judgments. Therefore, this Court finds that there was nothing left to decide and no reason to grant a new hearing.

Moreover, the Superior Court in Lebeau v. Lebeau succinctly explained res judicata. 393 A.2d 480 (Pa Super. 1978). The underlying policy of the doctrine is to minimize the judicial energy devoted to individual cases, establish certainty and respect for court judgments, and protect the party relying on the prior adjudication from vexatious litigation. Id. citing James and Hazard, Civil Procedure, 523 (1977). Res judicata will generally apply where the cause of action in one suit is identical with that involved in a prior judgment. Id. A final judgment rendered by a court of competent jurisdiction on the merits is conclusive of the rights of the parties and their

6

privies and constitutes a bar to a subsequent action involving that same claim, demand, or cause of action and issues determined therein. Id. ( See also Dempsey v. Cessna Aircraft Co., 653 A.2d 679, 680-81 (Pa. Super. 1995)). Four conditions must be shown to support a claim of re judicata: 1) the identity of the thing sued upon; 2) identity of the cause of action; 3) identity of the persons or parties to the action; and 4) identity of the quality or capacity of the parties suing or sued. Id.

Here, res judicata is applicable because Appellant is attempting to relitigate allegations that Appellee "deliberately hid or destroyed" documents subject to discovery. The matter on appeal has been addressed extensively. Specifically, Appellant presented a Motion to Quash the October 29, 2010 Consent Agreement because he was unable to obtain from Appellee 2003 documents subject to discovery. The Motion to Quash was denied by Judge DiSalle on April 13, 2011. Additionally, the parties had an opportunity to be heard by Master Held, who acknowledged that the October 29, 2010 Consent Agreement was binding. Master Held found Appellee in contempt of a court order directing her to provide Appellant with various personal documents and recommended that the court impose sanctions upon Appellee in the amount of $4500, to be allocated in equitable distribution. On April 11, 2012, Judge Gilman issued an order confirming the Master's recommendation and the sanctions.

Appellant has continued to file Petitions regarding the issue at hand. On August 31, 2012, Appellant filed a Petition for Contempt reasserting that he made "several attempts to retrieve his professional and personal documents, including . . . agreements between Plaintiff and Defendant regarding marital and pre-marital assets . . ." Subsequently, Judge Gilman determined: (1) that the Master already addressed the issue; (2) defendant's divorce exceptions were already stricken; (3) no appeal was taken to the Superior Court; and (4) the issue of sanctions will not be

7

relitigated. In light of the aforementioned, this Court declined to re-visit the issue because it is clear that it has been addressed on numerous occasions, and there is simply nothing left to decide. See Ham v. Sulek, 620 A.2d 5, 8 (Pa. Super. 1993) (where parties have been afforded an opportunity to litigate a claim before a court of competent jurisdiction, and where the court has finally decided the controversy, the interests of the state and of the parties require that the validity of the claim and any issue actually litigated in the action not be litigated again).

Appellant raises two additional assertions in his Statement, which are addressed together because they overlap.

4.    The Court erred as a matter of law in failing to follow 23 Pa. C.S. § 3505(d), which states if a party fails to disclose information required by general rule of the Supreme Court and in consequence thereof an asset or assets with a fair market value of $1000 or more is omitted from the final distribution of property, the party aggrieved by the nondisclosure may at any time petition the court granting the award to declare the creation of a constructive trust as to all undisclosed assets for the benefit of the parties and their minor or dependent children, if any. By statute the Court was required to grant Appellant's petition to set a hearing to determine, if indeed, the Appellee failed to disclose assets as required in 23 Pa.C.S. § 3505(d).

5.    The Court erred as a matter of law by failing to follow 23 Pa.C.S.A. § 3332 relating to modification, which states a motion to open a decree of divorce or annulment may be made only within the period limited by 42 Pa.C.S. § 5505 (relating to modification of orders) and not thereafter. The motion may lie where it is alleged that the decree was procured by intrinsic fraud or that there is new evidence relating to the cause of action which will sustain the attack upon its validity. A motion to vacate a decree or strike a judgment alleged to be void because of extrinsic fraud, lack of jurisdiction over the subject matter or a fatal defect apparent upon the face of the record must be made within five years after entry of the final decree. Since the petition stated the equitable distribution order was procured in part by extrinsic fraud, Appellant had five (5) years from the date of the equitable distribution order to attack its validity and thus the presentation of the petition was timely.

These arguments are appropriately rejected in accordance with 23 Pa. C.S.A. § 3332.

According to 23 Pa. C.S.A. §3332 "Opening or vacating decrees:"

> A motion to open a decree of divorce or annulment may be made only within the period limited by 42 Pa.C.S. § 5505 (relating to modification of orders) and not thereafter. The motion may lie where it is alleged that the decree was procured by intrinsic fraud or that there is new evidence

relating to the cause of action which will sustain the attack upon its validity. A motion to vacate a decree or strike a judgment alleged to be void because of extrinsic fraud, lack of jurisdiction over the subject matter or a fatal defect apparent upon the face of the record must be made within five years after entry of the final decree. Intrinsic fraud relates to a matter adjudicated by the judgment, including perjury and false testimony, whereas extrinsic fraud relates to matters collateral to the judgment which have the consequence of precluding a fair hearing or presentation of one side of the case.

23 Pa. C.S.A § 3332 (West). Additionally, according to 23 Pa. C.SA. 3505(d):

(d) Constructive trust for undisclosed assets -- If a party fails to disclose information required by general rule of the Supreme Court and in consequence thereof an asset or assets with a fair market value of $1,000 or more is omitted from the final distribution of property, the party aggrieved by the nondisclosure may at any time petition the court granting the award to declare the creation of a constructive trust as to all undisclosed assets for the benefit of the parties and their minor or dependent children, if any. The party in whose name the assets are held shall be declared the constructive trustee unless the court designates a different trustee, and the trust may include any terms and conditions the court may determine. The court shall grant the petition upon a finding of a failure to disclose the assets as required by general rule of the Supreme Court.

23 Pa. C.S.A. § 3505 (West). The Court finds that there was no evidence of fraud in accordance with § 3332 and thus no reason to grant a hearing to determine whether a constructive trust should be imposed pursuant to § 3505. Common sense belies Appellant's argument. He essentially is asking the Court to impose a constructive trust based upon Appellee's failure to provide an agreement between the parties from 2003 that he was involved in negotiating. The Court finds he was fully aware of the provisions of this voluntary agreement and had access to it as well, especially because he signed it.

Appellant relies significantly on Creeks; however, this Court finds the case is not applicable. Creeks v. Creeks, 619 A.2d 754 (Pa. Super 1993). In Creeks, Wife alleged that Husband breached the disclosure clause of their Marital Settlement Agreement by failing to disclose marital funds which he deposited during the marriage, into his paramour's bank account. Id. at 755. Hence, Wife sought to have a constructive trust imposed on the undisclosed assets.

9

Id. The funds Husband deposited into his paramour's bank account were not listed on Husband's Inventory and Appraisement Forms. Id. at 756. The Superior Court held that Husband violated the Agreement by not disclosing the funds and concluded that since Husband failed to disclose assets which may have been subject to equitable distribution, a constructive trust was appropriate. Id. at 756-57.

The current case is distinguishable from Creeks because all issues regarding disclosure of assets were previously addressed by different judges. Additionally, in the instant case, Appellant asserts that Appellee hid documents which he knew existed because he signed them in 2003. Appellant voluntarily entered into a new Consent Agreement knowing that another agreement existed. In contrast, in Creeks, Husband deposited marital funds into a paramour's account, and Wife had absolutely no knowledge of the existence of these marital funds at the time she entered into a Marriage Settlement Agreement. This Court finds that Creeks is inapplicable, and there are no remaining issues to resolve regarding nondisclosure of assets.

Appellant raises a sixth issue in his Statement contending:

6.     The Court abused its discretion by failing to grant Appellant's request for an award of attorney's fees due to Appellee's deliberate, dilatory and vexatious behavior regarding the hiding of premarital and marital property.

The Court did not abuse its discretion by failing to grant Appellant's request for an award of attorney's fees. According to 42 Pa, C.S.A. § 2503, the following participants shall be entitled to a reasonable counsel fee as part of the taxable costs of the matter:

> (7) Any participant who is awarded counsel fees as a sanction against another participant for dilatory, obdurate or vexatious conduct during the pendency of a matter.

> . . .

> (9) Any participant who is awarded counsel fees because the conduct of another party in commencing the matter or otherwise was arbitrary, vexatious or in bad faith.

10

42 Pa. C.S.A. § 2503 (West). The Court, in its discretion, did not award counsel fees to either participant in this matter because it did not find that either party, and certainly not Appellant, was entitled to fees.

## CONCLUSION

For the reasons set forth above, the Court respectfully submits that the Order of the Court dated October 16, 2014 should be affirmed and Appellant's appeal dismissed.

DATE:                                      BY THE COURT:


12-30-14                          _____Valarie Costanzo_____, J.
                                          Valarie Costanzo

11